RECEIVED

Apr 16, 2026

U.S. COURT OF APPEALS
FIFTH CIRCUIT

Case No. _____

UNITED STATES COURT OF APPEALS FOR
THE FIFTH CIRCUIT

JAMES SIMS, TERRIE SIMS, NEAL COMEAU, LILIANA COMEAU,
JENIFER SIDDALL, JON HOWELL, AND TERRY DUHON,
On behalf of themselves and all others similarly situated
*Respondent-Plaintiffs,*

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,
ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,
AND ALLSTATE INDEMNITY COMPANY,
*Petitioner-Defendants*

Petition to Appeal from the United States District Court
For the Western District of Texas, No. 5:22-cv-00580-JKP

**DEFENDANTS' PETITION FOR PERMISSION TO APPEAL UNDER RULE 23(f)**

Mark D. Taticchi
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Tel: (215) 988-2700
Fax: (215) 988-2767
Mark.Taticchi@faegredrinker.com

Roger D. Higgins
Texas Bar No. 09601500
John M. Wiggins
Texas Bar No. 24115950
Cassie J. Dallas
Texas Bar No. 24074105
THOMPSON COE COUSINS & IRONS LLP
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
Tel: (214) 871-8200
Fax: (214) 871-8209
rhiggins@thompsoncoe.com
jwiggins@thompsoncoe.com
cdallas@thompsoncoe.com

*Counsel for Petitioner-Defendants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1.    Parties

   *Petitioners:*
   Allstate Fire and Casualty Company
   Allstate Vehicle and Property Insurance Company
   Allstate Indemnity Company

   *Respondents:*
   James Sims
   Terry Sims
   Neal Comeau
   Liliana Comeau
   Jenifer Siddall
   Jon Howell
   Terry Duhon

2.    Attorneys

   *Counsel for Petitioners:*
   Roger D. Higgins
   John M. Wiggins
   Cassie Dallas
   Thompson, Coe, Cousins, & Irons LLP
   700 N. Pearl Street, 25th Floor
   Dallas, TX 75201-2832
   Tel: (214) 871-8200
   Email:    rhiggins@thompsoncoe.com
                  jwiggins@thompsoncoe.com
                  cdallas@thompsoncoe.com

Mark D. Taticchi
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Tel: (215) 988-2700
Fax: (215) 988-2767
Email: Mark.Taticchi@faegredrinker.com

*Counsel for Respondents:*

J. Brandon McWherter
MCWHERTER SCOTT & BOBBITT PLC
109 Westpark Drive, Suite 260
Brentwood, TN 37067
Tel: (615) 354-1144
Email: brandon@msb.law

Shaun W. Hodge
THE HODGE LAW FIRM, PLLC
The Historic Runge House
1301 Market Street
Galveston, TX 77550
Tel: (409) 762-5000
Email: shodge@hodgefirm.com

Erik D. Peterson
ERIK PETERSON LAW OFFICES, PSC
110 W. Vine Street, Suite 300
Lexington, KY 40507
Tel: (800) 614-1957
Email: erik@eplo.law

T. Joseph Snodgrass
SNODGRASS LAW LLC
100 South 5th Street, Suite 800
Minneapolis, MN 55402
Tel: (612) 448-2600
Email: jsnodgrass@snodgrass-law.com

3.    Entities with a Financial Interest

No other entities have a known financial interest in this case.

4.    Corporate Disclosure Statement (Fed. R. App. P. 26.1)

Allstate Vehicle and Property Insurance Company is a wholly-owned subsidiary of Allstate Insurance Company, which is an Illinois insurance company. Allstate Insurance Company is a wholly-owned subsidiary of Allstate Insurance Holdings, LLC, which is a Delaware limited liability company. Allstate Insurance Holdings, LLC is a wholly-owned subsidiary of The Allstate Corporation, which is a Delaware corporation.  The stock of The Allstate Corporation is publicly traded. No publicly-held entity owns 10% or more of the stock of The Allstate Corporation.

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................II

TABLE OF CONTENTS ................................................................................. V

ATTACHMENTS........................................................................................ VII

INDEX OF AUTHORITIES........................................................................... VIII

QUESTIONS PRESENTED ............................................................................ XII

    I.    Should the Court grant review to clarify whether named representatives with extinguished state-law claims lack standing to represent a putative Rule 23(b)(3) class? ...................................... xii

    II.    Should the Court grant review to clarify whether a Rule 23(b)(3) class may be certified when undisputed evidence showed that over 50% of the defined class did not have a claim for damages?............................................................................. xii

    III.    Should the Court grant review to clarify whether *Sampson's* application of Rule 23(b)(3) applies with equal force under Texas law? ................................................................................. xiii

    IV.    Should the Court grant review to provide guidance to district courts on the impact of (i) Texas's appraisal process, and (ii) the pre-suit payment of insured's full potential claim on putative class representatives' ability to satisfy Rule 23(a)(3) and (4)?................................................................................. xiii

INTRODUCTION...........................................................................................1

STATEMENT OF THE CASE .............................................................................2

    I.    Allstate's Policies ...........................................................................2

    II.    Plaintiffs' Claims and Class-Certification Motion................................4

    III.    The Court's Certification Order ........................................................6

REASONS FOR GRANTING THE PETITION..........................................................7

I.　　The Court Should Grant Review to Provide Guidance on Whether Plaintiffs Whose State-Law Claims Are Extinguished Lack Standing to Pursue Class Claims ....................................8

II.　　The Court Should Grant Review to Provide Guidance on Whether Adequacy and Typicality Are Satisfied When Plaintiffs Voluntarily Engaged in Appraisal, Stayed Class Litigation, and Seek to Recover Damages That Far Exceed Those Sought on Behalf of the Class ..................................13

III.　　The Court Should Grant Review to Provide Guidance on Whether Rule 23(b)(3)'s Predominance Requirement Is Satisfied When Plaintiffs' Theory of Liability and Damage Model Are Incapable of Establishing Liability for Any Class Member Through Common Proof and Individual Inquiries Dominate Consideration of Liability and Defensive Issues ................16

　　A.　　Liability and Damages Questions Cannot Be Resolved Through Class-Wide Proof ........................................17

　　B.　　Evidence of Market-Condition Adjustments to at Least 25% of the Proposed Class Means that Individual Issues Will Predominate ...................................................20

CONCLUSION & PRAYER .................................................................21

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS.................................23

CERTIFICATE OF CONFERENCE .........................................................23

CERTIFICATE OF SERVICE.................................................................24

**ATTACHMENTS**

Dkt. 196 – January 20, 2026 Report and Recommendation of
U.S. Magistrate Judge ................................................................................Exh. A

Dkt. 208 – March 25, 2026 Order Adopting Report & Recommendation
[Doc. 196] and granting in part Motion for Class Certification .....................Exh. B

March 30, 2026 Order re [Doc. 138] Sealed Motion......................................Exh. C

## INDEX OF AUTHORITIES

**Page(s)**

### CASES

*Ackerman v. Arkema, Inc.*,
157 F.4th 715 (5th Cir. 2025) ...................................................................15

*Angulo v. Safeco Ins. Co. of Ind.*,
No. 4:25-cv-580 (E.D. Tex.) ....................................................................15

*Barker v. Meridian Sec. Ins.*,
No. 5:22-cv-01243 (W.D. Tex.) ...............................................................15

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
242 F.3d 209 (5th Cir. 2001) .....................................................................8

*Block v. Employers Casualty Co.*,
723 S.W.2d 173 (Tex. 1986) ....................................................................17

*Bourque v. State Farm Mut. Auto. Ins. Co.*,
89 F.4th 525 (5th Cir. 2023) ....................................................................17

*Brasher v. Allstate Indem. Co.*,
2020 WL 4673259 (N.D. Ala. Aug. 12, 2020) ........................................20

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ..............................................................................9, 10

*Chavez v. Plan Benefit Servs., Inc.*,
957 F.3d 542 (5th Cir. 2020) .....................................................................8

*Cody v. Allstate Fire & Cas. Ins. Co.*,
19 F.4th 712 (5th Cir. 2021) ....................................................................18

*Cortinas v. Liberty Mut. Pers. Ins. Co.*,
2023 WL 11826495 (W.D. Tex. Mar. 14, 2023) ...............................10, 15

*Cruson v. Jackson Nat'l Life Ins. Co.*,
954 F.3d 240 (5th Cir. 2020) ...................................................................16

*Drought v. State Farm Fire & Cas. Co.*,
2009 WL 10701920 (W.D. Tex. Jan. 7, 2009) ...........................................3

*Echevarria-Juarbe v. Lemonade Ins. Co.*,
   No. 4:23-CV-00396 (S.D. Tex.) ...................................................................15

*Fontenot v. McCraw*,
   777 F.3d 741 (5th Cir. 2015) .......................................................................12

*Glasner v. Am. Economy Ins. Co.*,
   2026 WL 395006 (D. Mass. Feb. 12, 2026) ..................................................9

*Goble v. Trumbell Ins. Co.*,
   2023 WL 9050956 (S.D. Ohio Dec. 29, 2023)..............................................14

*Hadix v. Johnson*,
   322 F.3d 895 (6th Cir. 2003) .......................................................................11

*Kahlig Enters., Inc. v. Affiliated FM Ins. Co.*,
   2024 WL 1554067 (5th Cir. Apr. 10, 2024)...............................................4, 9

*Lara v. First Nat'l Ins. Co. of Am.*,
   25 F.4th 1134 (9th Cir. 2022) ......................................................................17

*Lerer Realty Corp. v. MFB Mut. Ins.*,
   474 F.2d 410 (5th Cir. 1973) .........................................................................3

*Mew v. J&C Galleries, Inc.*,
   564 S.W.3d 377 (Tex. 1978) .....................................................................3, 18

*Microsoft Corp. v. Baker*,
   582 U.S. 23 (2017).........................................................................................7

*Mirelez v. State Farm Lloyds*,
   127 F.4th 949 (5th Cir. 2025) ......................................................................15

*Mitchell v. State Farm Fire & Cas. Co.*,
   327 F.R.D. 552 (N.D. Miss. 2018),
   *aff'd* 954 F.3d 700 (5th Cir. 2020)............................................................5, 19

*Morrison v. Spinnaker Ins.*,
   No. 4:23-cv-324 (E.D. Tex.)..........................................................................15

*Ortiz v. State Farm Lloyds*,
   589 S.W.3d 127 (Tex. 2019) .........................................................1, 11, 12, 14

*Page v. State Farm Life Ins. Co.*,
   584 F. Supp. 3d 200 (W.D. Tex. 2022) ............................................................19

*Prime Time Family Entm't Cr., Inc. v. AXIS Ins. Co.*,
   630 S.W.3d 226 (Tex. App.—Eastland 2020, no pet.)........................................6

*Pringle v. Moon*,
   158 S.W.3d 607 (Tex. App.—Fort Worth 2005, no pet.)....................................4

*Randel v. Travelers Lloyds of Tex. Ins. Co.*,
   9 F.4th 264 (5th Cir. 2021) ..............................................................................12

*Regents of Univ. of Cal. v. Credit Suisse First Boston*,
   482 F.3d 372 (5th Cir. 2007) ..............................................................................8

*Religious of the Sacred Heart of Texas v. City of Houston*,
   836 S.W.2d 606 (Tex. 1992) ........................................................................2, 18

*Rodriguez v. Safeco Ins. Co. of Ind.*,
   684 S.W.3d 789 (Tex. 2024) .......................................................................10, 12

*Sampson v. USAA*,
   83 F.4th 414 (5th Cir. 2023) ........................................................................2, 17

*Scott v. Dart*,
   99 F.4th 1076 (7th Cir. 2024) ...........................................................................11

*Shular v. LVNV Funding LLC*,
   2016 WL 685177 (S.D. Tex. Feb. 18, 2016) .....................................................14

*Sims v. Allstate Fire & Cas. Ins. Co.*,
   650 F. Supp. 3d 540 (W.D. Tex. 2023) .............................................................10

*Singleton v. Elephant Ins. Co.*,
   953 F.3d 334 (5th Cir. 2020) .......................................................................3, 18

*Spegele v. USAA Life Ins. Co.*,
   336 F.R.D. 537 (W.D. Tex. 2020) .....................................................................19

*State Farm Fire & Cas. Co. v. Griffin*,
   888 S.W.2d 150 (Tex. App.–Houston [1st Dist.] 1994, no writ) .......................11

x

*Stuart v. State Farm Fire & Cas. Co.*,
   910 F.3d 371 (8th Cir. 2017) ............................................................5

*Tex. Farmers Ins. Co. v. McGuire*,
   744 S.W.2d 601 (Tex. 1988) .............................................................6

*TMM Inv., Ltd. v. Ohio Casualty Ins. Co.*,
   730 F.3d 466 (5th Cir. 2013) ........................................................1, 12

*Tolar v. Allstate Tex. Lloyd's Co.*,
   772 F. Supp. 2d 825 (N.D. Tex. 2011) ............................................17

*Tyson Foods, Inc. v. Bouaphakeo*,
   557 U.S. 422 (2016)..........................................................................16

*U.S. Fire Ins. v. Stricklin*,
   556 S.W.2d 575 (Tex. App.—Dallas 1977) ......................................3

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................8

*Wilson v. Centene Mgmt. Co., L.L.C.*,
   168 F.4th 217 (5th Cir. 2026) ...........................................................9

*Yount v. Travelers Pers. Ins. Co.*,
   SA-23-CV-00150 (W.D. Tex.) .........................................................15

## QUESTIONS PRESENTED

I.     The district court certified a class of Allstate insureds represented by two plaintiff groups:

- *Appraisal Plaintiffs*, whose claims based on underpayment of policy benefits were extinguished under Texas law because Allstate tendered appraisal-award payments before Plaintiffs sought class certification; and

- *"Interest-Only" Plaintiffs*, who undisputedly received maximum policy benefits owed before filing suit.

The district court held that *Appraisal Plaintiffs* had standing because they rejected the tender of the appraisal award, and that *Interest-Only Plaintiffs* had standing because they might receive service awards.

**Should the Court grant review to clarify whether named representatives with extinguished state-law claims lack standing to represent a putative Rule 23(b)(3) class?**

II.     **Should the Court grant review to clarify whether a Rule 23(b)(3) class may be certified when undisputed evidence showed that over 50% of the defined class did not have a claim for damages?**

III.     Under Texas law, proof of injury is an essential element of a breach-of-contract claim. For claims asserting breach of an insurance contract where the contract provides that the measure of damages is the actual cash value of the damaged or destroyed property, Plaintiff must show what the fair-market value of the property was at the time of loss and prove underpayment of that amount.

Confronting a nearly identical situation under Louisiana law, this Court held that Rule 23(b)(3)'s predominance requirement is not met unless the proffered liability model "prove[s] an actual underpayment by class-wide proof." *See Sampson v. USAA*, 83 F.4th 414, 422 (5th Cir. 2023). Without such evidence liability cannot *in fact* be established classwide. As acknowledged by their own expert, Plaintiffs' proposed model does not measure ACV-in fact. The district court bypassed *Sampson* and tried instead to avoid the issue by simply deleting the class definition's reference to fair-market value.

**Should the Court grant review to clarify whether *Sampson's* application of Rule 23(b)(3) applies with equal force under Texas law?**

IV.     **Should the Court grant review to provide guidance to district courts on the impact of (i) Texas's appraisal process, and (ii) the pre-suit payment of insured's full potential claim on putative class representatives' ability to satisfy Rule 23(a)(3) and (4)?**

**INTRODUCTION**

The putative class in this case never should have been certified, for at least three independent reasons. *First*, none of the named plaintiffs possesses standing—some, because their claims were extinguished as a matter of Texas law when they voluntarily submitted to an appraisal process and Allstate tendered the amount awarded by the appraiser;[1] others, because Allstate undisputedly paid the full amount of their claim before their complaint was filed. Moreover, it is unrefuted that over 50% of the class received all amounts owed.

*Second*, the proposed class failed to satisfy Rule 23(a)'s typicality and adequacy requirements because Plaintiffs' consent to appraisal and pre-suit payment-in-full put them fundamentally at odds with the rest of the class.

*Third*, predominance and superiority were also lacking because, among many other reasons, Plaintiffs' liability model could not establish with common proof Allstate's failure to pay fair-market value (FMV) to *any* individual class member (much less *every* individual class member).

The district court bypassed each of these and other objections with only a cursory discussion, failing to apply the "rigorous analysis" that Supreme Court and Fifth Circuit precedent require.

---

[1] *E.g.*, *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 130, 133 (Tex. 2019); *TMM Inv., Ltd. v. Ohio Casualty Ins. Co.*, 730 F.3d 466, 475 (5th Cir. 2013).

Immediate review is warranted, not only because of these failures but because the issues presented here are likely to recur in future cases. The appraisal mechanism, for example, is widely used in property-damage cases, but how it interacts with federal standing and the requirements of Rule 23 appears to be a novel issue in this Circuit. Likewise, this Court has not previously determined whether the predominance model it applied to analyze actual-cash-value underpayment under Louisiana law applies with equal force to Texas's analogous regime. *See Sampson v. USAA*, 83 F.4th 414, 422 (5th Cir. 2023). Allstate's petition should be granted so the Court can provide guidance on these important issues.

## STATEMENT OF THE CASE

### I.    Allstate's Policies

This is a dispute about the value of Plaintiffs' property damage loss and whether Allstate paid that amount.

Allstate's polices include a bifurcated payment structure. When an insured "do[es] not repair or replace the damaged, destroyed or stolen property," Allstate pays the insured on an "actual cash value basis" (ACV).[2] In Texas, ACV is synonymous with "fair-market value" (FMV). *Religious of the Sacred Heart of*

---

[2] Dkt. 140-1, at 37–38; Dkt. 142-1, at 40, Dkt. 141-1, at 91–92 (the policies).

*Texas v. City of Houston*, 836 S.W.2d 606, 613–16 (Tex. 1992).[3] Although undefined in the policies, ACV is generally considered to be unambiguous. *See U.S. Fire*, 556 S.W.2d at 582; *Drought v. State Farm Fire & Cas. Co.*, 2009 WL 10701920, at *8 (W.D. Tex. Jan. 7, 2009).

If repairs are made, the Building Structure Reimbursement provision provides for payment of replacement or repair cost. This method of payment is commonly referred to as the "replacement cost value" ("RCV") and represents the most the insured can recover under the policy.

To determine ACV and RCV, Allstate's claims process generally uses a third-party's (Verisk) software program known as Xactimate. Dkt. 147, Ex. 12, ¶¶7–12; Dkt. 209-7, ¶¶7–12. Xactimate's suggested prices are intended as a starting point for the highly individualized task of loss valuation, which may involve multiple estimates and multiple payments made to an insured. Allstate provided examples of 15 factors adjusters consider independent of Xactimate when estimating ACV and RCV. Dkt. 147, Ex. 12, ¶8; Dkt. 209-7, ¶8. Among other things, adjusters can make "market conditions" adjustments to estimates, which typically involve an upward price adjustment to material, labor, and equipment expenses. Market conditions impact 25% of class claims and are included in non-

---

[3] Nearly 50 years of precedent supports this proposition. *See U.S. Fire Ins. v. Stricklin*, 556 S.W.2d 575, 582 (Tex. App.—Dallas 1977); *Singleton v. Elephant Ins. Co.*, 953 F.3d 334, 337–38 (5th Cir. 2020) (citing *Mew v. J&C Galleries, Inc.*, 564 S.W.3d 377, 377 (Tex. 1978)); *Lerer Realty Corp. v. MFB Mut. Ins.*, 474 F.2d 410, 413 (5th Cir. 1973).

material depreciation data (such that they may reflect price increase related to material, which cannot be segregated out). Dkt. 147, Ex. 12, ¶¶9, 11–12, Ex. 12-1; Dkt. 209-7, ¶¶9, 11–12.

## II.   Plaintiffs' Claims and Class-Certification Motion

Plaintiffs are Allstate insureds who made property-damage claims.[4]

During litigation, James and Terrie Sims, Neal Comeau and Liliana Comeau, Jennifer Siddall (Appraisal Plaintiffs) participated in appraisal, which resulted in the issuance of appraisal awards that did not include any depreciation for labor or non-material items. Before Plaintiffs moved for class certification, Allstate tendered payment of the awarded amounts plus any potential statutory interest. Dkt. 161, at 6; Dkt. 162, at 7; Dkt. 163, at 7; *see also* Dkt. 188, at 3. Jon Howell and Terry Duhon (Interest-Only Plaintiffs) were paid RCV—the maximum policy benefit owed—*before* they sued. Although not entitled to a judgment under Texas law, they seek recovery of pre-judgment interest.[5]

All Plaintiffs contend that Allstate's policies are ambiguous because ACV is undefined and that Allstate improperly depreciated estimates of "future labor expenses" in estimating ACV. Specifically, Plaintiffs allege that Defendants improperly adjusted their ACV claims by depreciating labor and other non-

---

[4] Plaintiffs have not asserted extracontractual claims under the Texas Insurance Code or common law, so statutory interest and adequacy of claims handling are not at issue.

[5] *Kahlig Enters., Inc. v. Affiliated FM Ins. Co.*, 2024 WL 1554067, at *4 (5th Cir. Apr. 10, 2024); *see also Pringle v. Moon*, 158 S.W.3d 607, 611 (Tex. App.—Fort Worth 2005, no pet.).

material costs from an RCV estimate, which they say breached Allstate's policies and led to underpayment of ACV.

Plaintiffs sought certification for a class of 40,000+, asserting breach-of-contract claims based on Allstate's alleged underpayment of ACV. *See* Dkt. 147, Ex. 12, ¶7, Ex. 12-1; Dkt. 209-7, at 3–4. Plaintiffs' liability model assumes that breach can be shown by demonstrating that Allstate depreciated non-material items from the last estimate produced during the claims process. Plaintiffs proffered a methodology that identifies only the non-material depreciation applied to that estimate and does not address or attempt to calculate ACV or FMV directly. Dkt. 209-3, at 7.

Plaintiffs' motion avoided any mention of a trial plan and asserted that prior decisions addressing different policy language under Mississippi and Arkansas law controlled the contract interpretation issues in the case. *See* Dkt. 209-3, at 11–12 (citing *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 563 (N.D. Miss. 2018), *aff'd* 954 F.3d 700 (5th Cir. 2020); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 376 (8th Cir. 2017)).

Allstate opposed certification, pointing out that *Mitchell* and *Stuart* do not apply or control in fair-market-value jurisdictions like Texas, *e.g.*, Dkt. 209-6; Dkt. 195, at 204, and disputing Plaintiffs' core premise that the last estimate in each class member's file was binding on Allstate for purposes of both establishing

breach and determining damages. Dkt. 209-6, at 29 (citing *Prime Time Family Entm't Cr., Inc. v. AXIS Ins. Co.*, 630 S.W.3d 226, 232–33 (Tex. App.—Eastland 2020, no pet.); *Tex. Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 603 (Tex. 1988)). Indeed, Plaintiffs' own expert admitted that Plaintiffs' model cannot prove what ACV—or FMV—would be for any class member's claimed loss. *See* Dkt. 147, at 15–26, Ex. 20, at 133:12–24, 146:20–25; Dkt. 209-6, at 15–26. Allstate likewise disputed Plaintiffs' adequacy and the typicality, and raised issues of superiority and manageability.

Allstate also challenged the existence of a cognizable injury or concrete harm to Plaintiffs, as well as Plaintiffs' ability to show a concrete injury-in-fact for all class members with common proof, couching the problem as one of both standing and predominance. Dkt. 209-6, at 25, 43. For example, Allstate showed that a significant percentage of the class had no claim for depreciation damages because, the claims evaluation process for those class members (i) did not involve any non-material depreciation; (ii) involved payment of RCV or more; or (iii) involved payment of more than Plaintiffs' estimated damages. Dkt. 147, Ex. 12 ¶7, Ex. 12-1; Dkt. 209-7, ¶7.

## III.    The Court's Certification Order

The district court, adopting the Magistrate Judge's Report and Recommendation, certified a "labor depreciation" class as proposed by Plaintiffs.

6

The court modified the definition by removing the reference to FMV and by adding a definition of non-material depreciation in an effort to address the market-conditions issue Allstate raised.[6]

The court summarily rejected Allstate's standing arguments, holding that the Plaintiffs maintained a concrete interest despite the Interest-Only Plaintiffs having received the maximum amount owed under the policies and despite Allstate having tendered to the Appraisal Plaintiffs the award amounts determined through binding appraisal. Dkt. 208, at 4–7.

The district court did not write separately to address predominance, typicality, adequacy, or superiority. Instead, it agreed with and adopted the Report and Recommendation on these points.[7]

### REASONS FOR GRANTING THE PETITION

Rule 23(f) provides "protection against improvident certification decisions," committing to the Court of Appeals the discretion to permit an interlocutory appeal from an adverse certification order. *Microsoft Corp. v. Baker*, 582 U.S. 23, 31–32 (2017). Review is particularly appropriate for decisions that "turn on a novel or unsettled question of law," or involve a certification order that "may force a

---

[6] Dkt. 208, at 1-2; Dkt. 196, at 18; Dkt. 209-15, at 21 (showing modifications to Plaintiffs' proposed class definition by ~~strikethrough~~ and <u>underlined</u> text).

[7] On these points, Allstate cites to the Report and Recommendation as if it were issued by the district court.

defendant to settle….” *Regents of Univ. of Cal. v. Credit Suisse First Boston*, 482 F.3d 372, 380, 379 (5th Cir. 2007).

In deciding whether to certify a class, a district court’s “rigorous analysis” will “[f]requently … entail some overlap with the merits of the plaintiff’s underlying claim.” *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Indeed, this Court has observed that, “[t]o satisfy the rigor requirement,” district courts must analyze the “applicable substantive law” and “address actual or potential differences in purported class members’ individual circumstances and claims.” *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 548 (5th Cir. 2020). The district court did not.

Because of this certification/merits overlap, a court’s error in construing state law or in applying the law to the facts, compounds exponentially at class-certification. This Court has, and should exercise, jurisdiction under Rule 23(f) to “address arguments that implicate the merits of plaintiffs’ cause of action insofar as those argument implicate the merits of the class certification decision.” *Regents*, 482 F.3d at 380, 381.

## I.    The Court Should Grant Review to Provide Guidance on Whether Plaintiffs Whose State-Law Claims Are Extinguished Lack Standing to Pursue Class Claims

Because “[s]tanding is an inherent prerequisite to the class certification inquiry,” it is part of the Court of Appeals’ Rule 23(f) review. *Bertulli v. Indep.*

*Ass'n of Cont'l Pilots*, 242 F.3d 209, 294 (5th Cir. 2001). Allstate challenged Plaintiffs' standing to pursue their own claims and demonstrated that many members of the putative class have no breach-of-contract injury. Dkt. 147, at 23–24, Ex. 12-1; Dkt. 200, at 28–29; Dkt. 209-6, at 23–24; Dkt. 209-15, at 28–29; *see also* Dkt. 180, at 17. This Court's most recent standing decision in the class certification context reaffirmed that "the class representative must establish his standing as an individual before he may represent a class of other allegedly injured persons." *Wilson v. Centene Mgmt. Co., L.L.C.*, 168 F.4th 217, 224 (5th Cir. 2026). *Wilson* leaves unresolved whether a class may be certified when its members have no injury—a question that has divided the Circuits, and which this Court has not definitively answered, but is raised here. *See id.* at 230.

***The Interest-Only Plaintiffs Have No Injury-in-Fact.*** The court's summary-judgment order recognized that the Interest-Only Plaintiffs "have no damages from Allstate's withholding of labor costs from its initial ACV payment" because they were paid RCV, or more, before they filed suit. *See* Dkt. 180, at 17. They also cannot recover pre-judgment interest under Texas law. *Kahlig*, 2024 WL 1554067, at *4. In other words, the Interest-Only Plaintiffs were not harmed by any alleged breach of contract.

Despite this, the district court concluded they had standing. Dkt. 208, at 3–6. Citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), and *Glasner v. Am.*

9

*Economy Ins. Co.*, 2026 WL 395006 (D. Mass. Feb. 12, 2026), the court held that the Interest-Only Plaintiffs had standing based on Allstate's depreciation of labor "when [it] calculated and submitted initial ACV payments." Dkt. 208, at 4–5 (reasoning that "[the] depreciation resulted in immediate economic harm"). The district court also, inexplicably, found standing based on these Plaintiffs' "ongoing financial interest in seeking service awards." Dkt. 208, at 5–6.

The district court's standing analysis cannot be squared with Texas law or this Court's precedent. *Campbell-Ewald* held that a rejected offer of judgment under Rule 68 could not moot a case. *Campbell-Ewald*, 577 U.S. at 161–64. It says nothing about the effect of a pre-suit payment of all amounts owed on an insurance policy or the extinguishment of a claim under Texas law. The *Glasner* decision is nor controlling or authoritative. Although that court concluded that "'Texas law does not unambiguously allow labor depreciation absent contract language,'" its *Erie*-guess analysis cited back to this district court's decisions in *Cortinas v. Liberty Mut. Pers. Ins. Co.*, 2023 WL 11826495, at *2–3 (W.D. Tex. Mar. 14, 2023), and *Sims v. Allstate Fire & Cas. Ins. Co.*, 650 F. Supp. 3d 540, 545–46 (W.D. Tex. 2023), rather than relevant and controlling Texas law. In Texas, an insured's breach of contract claim is extinguished upon payment of the maximum amount owed on the policy. *See, e.g., Rodriguez v. Safeco Ins. Co. of Ind.*, 684

S.W.3d 789, 794 (Tex. 2024); *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 130, 133 (Tex. 2019).

Because they are not entitled to any further payment under their policies, the Interest-Only Plaintiffs have no injury. *See, e.g.*, *State Farm Fire & Cas. Co. v. Griffin*, 888 S.W.2d 150, 156 (Tex. App.–Houston [1st Dist.] 1994, no writ) ("An insurance contract is by definition a contract of indemnity, under which an insurer cannot be required to pay its insured more than the amount of his actual loss.").

The conclusion that "service awards" can salvage standing and class certification is equally baseless. Unless an executed, class-wide settlement contract provides for a service award, Plaintiffs have no standing to pursue one. *E.g.*, *Scott v. Dart*, 99 F.4th 1076, 1083 (7th Cir. 2024) ("[A] settlement agreement must expressly reserve [] rights of the named plaintiffs to pursue an incentive award on appeal in order to secure standing."); *Hadix v. Johnson*, 322 F.3d 895, 898–99 (6th Cir. 2003).

The court left unaddressed the undisputed evidence that Allstate made similar, pre-suit RCV payments to **over 50%** of the proposed class, or the implications of that for the standing of the absent class members. *See* Dkt. 147, at 25 n.20, Ex. 12-1; Dkt. 209-6, at 25 n.20.

***The Appraisal Plaintiffs' Contract Claims Were Extinguished by Tender of the Appraisal Award.*** Under Texas law, an insurer discharges its contractual

11

liability by tendering "the appraisal amount" plus any possible statutory interest. *Rodriguez*, 684 S.W.3d at 794. Before Plaintiffs moved for class-certification, Allstate's tender of the appraisal award plus any conceivable statutory interest extinguished each Appraisal Plaintiff's breach-of-contract claim as a matter of law. *See supra*, at 4; *Ortiz*, 589 S.W.3d at 130, 133; *Randel v. Travelers Lloyds of Tex. Ins. Co.*, 9 F.4th 264 (5th Cir. 2021); *TMM Inves., Ltd.*, 730 F.3d at 475 (concluding that tender of appraisal award fulfilled terms of the insurance contract).

The order rejected Allstate's argument that the Appraisal Plaintiffs lack standing because it viewed the appraisal payment—made prior to the filing of any class certification motion—as a rejected settlement offer. Dkt. 208, at 6. That view is contrary to Texas law, as is the Court's conclusion that payment of the appraisal award did not extinguish the Appraisal Plaintiffs' breach of contract claim. *See Fontenot v. McCraw*, 777 F.3d 741, 750–751 (5th Cir. 2015) (refusing to create exception to mootness doctrine when claim became moot before filing of class-certification motion).[8]

---

[8] Although the court did not elaborate on its reasoning, it appears to have conflated Texas's *substantive* rule of decision (tender of an appraisal award amount, plus statutory interest, extinguishes a breach-of-policy claim) with the materially different question presented in *Campbell-Ewald*, which was whether an offer of judgment tendered under a *federal procedural rule* could moot and extinguish a plaintiff's claim. Under our federal structure, as reinforced by the Rules Enabling Act, Rule 68 could not establish a regime that would extinguish substantive state-law claims. Texas's legislature and courts, of course, are not so constrained, and so the

The court's foundational error in misapplying Texas law doomed its standing and class certification analysis. This Court should grant review to provide guidance to lower courts on how an insurer's fulfilment of its contractual obligations—either before or during litigation—impacts standing and class certification, and to resolve whether class certification is supported when class members have no injury.

**II.    The Court Should Grant Review to Provide Guidance on Whether Adequacy and Typicality Are Satisfied When Plaintiffs Voluntarily Engaged in Appraisal, Stayed Class Litigation, and Seek to Recover Damages That Far Exceed Those Sought on Behalf of the Class**

The court gave short shrift to Allstate's arguments that Plaintiffs fail to satisfy the adequacy and typicality requirements for class certification. Dkt. 196, at 5–7; Dkt. 208, at 8.

Allstate raised that the Appraisal Plaintiffs did not share similar "legal and remedial theories" with the proposed class, or that their claims and those of the proposed class have "the same essential characteristics" as required under Rule 23(a). Dkt. 147, at 37, 41 (citations omitted). Throughout the case, the Appraisal Plaintiffs eschewed the labor depreciation damage model they would have the district court apply to the class, and made clear that their own damages, equivalent to RCV, far exceeded the amount of depreciated labor. Dkt. 146-14, Ex. 16, at

---

district court erred in engrafting the rejected-offer framework of *Campbell-Ewald* onto Texas's appraisal regime.

13:4-24, 14:19-25, 60:11-22; Dkt. 146-15, Ex. 17, at 57:25-58:11, 59:20-22, 60:3-20, 62:4-6; Dkt. 146-16, Ex. 18, at 56:15-21, 59:23-60:13.

Additionally, the Appraisal Plaintiffs voluntarily engaged in appraisal to resolve the parties' dispute about the amount of their loss. *See Ortiz*, 589 S.W.3d at 131. By agreeing to allow an appraiser to value their losses, they have effectively abandoned the class's theory that both the fact of injury and the quantum of damages must be determined exclusively by calculating the amount of non-material depreciation included in Allstate's last, paid estimate.

The district court failed to rigorously analyze this issue and Allstate's contention that the Appraisal Plaintiffs would be "preoccupied with a claim or defense that is applicable only to [them]sel[ves]"—an issue impacting adequacy, typicality, and predominance. *See Shular v. LVNV Funding LLC*, 2016 WL 685177, at *11 (S.D. Tex. Feb. 18, 2016). The court also brushed aside the "significant disparity in financial incentives between the representative and individual claims," summarily concluding that Plaintiffs were adequate because they have not expressed antipathy toward putative class members, and because they refused to accept Allstate's tender of the appraisal award. Dkt. 196, at 9. *But see Goble v. Trumbell Ins. Co.*, 2023 WL 9050956, at *6–7 (S.D. Ohio Dec. 29, 2023) (concluding that plaintiffs were not adequate when the "most lucrative aspects of their claim" was RCV damages).

14

The Interest-Only Plaintiffs likewise failed to clear the adequacy and typicality hurdles because Allstate's pre-suit RCV payments mean their claims do not share the same essential characteristics or the same legal and remedial theories of those by class members who did not receive payments equaling or exceeding Allstate's RCV estimate (or their actual cost of repair). They are also not typical because contractual limitations issues impact their claims. Dkt. 209-6, at 41–42; Dkt. 209-15, at 12–13 (quoting *Ackerman v. Arkema, Inc.*, 157 F.4th 715, 718 (5th Cir. 2025) (holding *American Pipe* tolling does not allow for federal class action filings to toll Texas state-law claims)).

The effect of appraisal on breach of contract claims is an issue regularly decided by this Court. *See, e.g.*, *Mirelez v. State Farm Lloyds*, 127 F.4th 949, 951 (5th Cir. 2025). But the impact of a putative class representative's participation in appraisal on questions of typicality and adequacy under Rule 23(a) appears to be a novel one, with district courts reaching inconsistent results.[9] This is not the only labor depreciation class action in Texas. Given the prevalence of property insurance litigation and appraisal, this Court's review would provide needed

---

[9] *See, e.g.*, *Cortinas v. Lib. Mut. Pers. Ins.*, No. 22-cv-00544 (W.D. Tex.); *Morrison v. Spinnaker Ins.*, No. 4:23-cv-324 (E.D. Tex.); *Barker v. Meridian Sec. Ins.*, No. 5:22-cv-01243 (W.D. Tex.); *Angulo v. Safeco Ins. Co. of Ind.*, No. 4:25-cv-580 (E.D. Tex.); *Yount v. Travelers Pers. Ins. Co.*, SA-23-CV-00150 (W.D. Tex.); *Echevarria-Juarbe v. Lemonade Ins. Co.*, No. 4:23-CV-00396 (S.D. Tex.).

guidance to district courts on how to analyze adequacy and typicality in this context.

This Court should also grant review to clarify whether plaintiffs who seek individual damages that are inconsistent with and disparate from those of the putative class are adequate and typical class representatives.

**III.  The Court Should Grant Review to Provide Guidance on Whether Rule 23(b)(3)'s Predominance Requirement Is Satisfied When Plaintiffs' Theory of Liability and Damage Model Are Incapable of Establishing Liability for Any Class Member Through Common Proof and Individual Inquiries Dominate Consideration of Liability and Defensive Issues**

The predominance requirement "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253 (5th Cir. 2020) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 557 U.S. 422, 453 (2016)). The district court did not independently analyze predominance. Instead, it summarily found "no error in Magistrate Judge Bemporad's legal conclusions or factual findings," and dismissed Allstate's 30-page Objections as "not identify[ing] any specific legal or factual error," and repackaging previously rejected arguments. Dkt. 208, at 8. In effect, the court uncritically accepted Plaintiffs' argument that "the case turns 'on a single, predominating question: whether…Defendants breached their standard form-policies by withholding labor depreciation,'" without holding Plaintiffs to the actual burden imposed by Rule 23 or *Sampson*. Dkt. 196 at 10.

### A. Liability and Damages Questions Cannot Be Resolved Through Class-Wide Proof

In *Sampson*, this Court held that certification was proper only if "plaintiffs could prove injury—*i.e.*, underpayment—on a class-wide basis" because proof of injury is an essential element of a breach of contract claim under Louisiana law. *Sampson*, 83 F.4th at 422. The Court rejected the *Sampson* plaintiff's contention that they met this standard and vacated the class-certification order. *Id.* The Court explained that the value plaintiffs claimed equated to ACV, was one of several acceptable methods for calculating ACV under Louisiana law. *Id.* As a result, plaintiffs' "impermissibly arbitrary choice of a liability model" could not satisfy the predominance requirement because it did not establish ACV in fact. *Bourque v. State Farm Mut. Auto. Ins. Co.*, 89 F.4th 525, 528–29 (5th Cir. 2023); *see also Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022) (affirming denial of class certification where plaintiff could not prove actual underpayment by class-wide proof).

As in *Sampson*, the proper liability inquiry here is whether Allstate paid what was owed under the policies. *Sampson*, 83 F.4th at 419. Texas law is similar to Louisiana law because damages are "a central element to be proven in an action for the alleged breach of an insurance contact…." *Tolar v. Allstate Tex. Lloyd's Co.*, 772 F. Supp. 2d 825, 832 (N.D. Tex. 2011) (citing *Block v. Employers Casualty Co.*, 723 S.W.2d 173, 178 (Tex. 1986)). And, as has been discussed,

17

ACV[10] is equivalent to FMV in Texas and may be determined using several methodologies. *Religious of the Sacred Heart of Tex.*, 836 S.W.2d at 615–16; *see also Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 714 (5th Cir. 2021). In *Sampson*, the plaintiff relied on one acceptable method of proving ACV. Plaintiffs model does not even measure ACV.

The district court acknowledged the equivalence of ACV and FMV under Texas law. Dkt. 208, at 8; Dkt. 196, at 11–12; Dkt 209-6, at 12–22. But rather than analyzing whether Plaintiffs' liability theory was capable of demonstrating underpayment of ACV in fact, the court concluded that predominance was satisfied because it was deemed satisfied "in other insurance cases." *See* Dkt. 196, at 9–10. The court failed to consider an admission by Plaintiffs' expert, Toby Johnson, that Plaintiffs' model could not prove the actual ACV, or FMV, of any class member's claimed loss. *See* Dkt. 209-6.

Ultimately, the district court failed to heed *Sampson* and *Bourque*, relying instead on inapposite case law from jurisdictions in which ACV and FMV are not synonymous and where damages are not an element of a breach of contract claim. Specifically, the court relied on *Mitchell*, a case in which this Court assessed predominance in a non-fair-market-value jurisdiction based on different policy language and a state statute, as well as two inapposite cases about fees assessed on

---

[10] *Singleton v. Elephant Ins. Co.*, 953 F.3d at 337–38 (citing *Mew v. J&C Galleries, Inc.*, 564 S.W.3d 377, 377 (Tex. 1978)).

life insurance policies.[11] In certifying the class, the court allowed Plaintiffs to focus on the amount of non-material depreciation but ignored the critical starting point of determining ACV in fact.

The court concluded it could sidestep the issues Allstate raised by deleting the reference to fair-market value in the class definition. But this amendment only creates additional problems. First, the amendment proceeds from an inaccurate presumption that Plaintiffs' ability to identify the amount of non-material depreciation applied to the last-paid estimate in a claim file is sufficient to establish Allstate's liability for breach of contract. Dkt. 196, at 12. That is wrong under Texas law. To the contrary, Allstate could legitimately use any legally recognized methodology for estimating ACV, provided that the amount equated to FMV. *See supra*, at 2–3. Plaintiffs have not shown that their replacement-cost-less-materials-depreciation-only methodology actually achieves the FMV for any proposed class member's claim.

What's more, evidence that Allstate followed the cost approach method (replacement cost less depreciation) as a starting point to estimate the value of Plaintiffs' or any class claimant's loss does not automatically establish liability for underpayment of ACV. Striking the "fair market value" clause from the class

---

[11] Dkt. 196, at 9–10 (citing *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 563 (N.D. Miss. 2018), *aff'd* 954 F.3d 700 (5th Cir. 2020); *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 555 (W.D. Tex. 2020); *Page v. State Farm Life Ins. Co.*, 584 F. Supp. 3d 200, 220 (W.D. Tex. 2022)).

definition, as the court did, is not a substitute for rigorously analyzing whether Plaintiffs can prove underpayment of ACV *in fact*, using common proof.

B.   **Evidence of Market-Condition Adjustments to at Least 25% of the Proposed Class Means that Individual Issues Will Predominate**

It is particularly relevant that the court failed to rigorously analyze Allstate's evidence that market-condition adjustments affected ACV calculations for approximately 25% of claims within the proposed class. As explained by Allstate, market-condition adjustments account for market-based variation in costs of material, equipment, and labor. Dkt. 147, at 30–34, Ex. 12 ¶9; Dkt. 209-6, at 30–34; Dkt. 209-7, ¶9. Depreciation applied to market conditions—including material prices—are included in the non-material depreciation data Plaintiffs rely on, but it cannot be determined whether the market-condition adjustment was for material, equipment, labor, or some combination of those elements. In other words, there is no way to know, based on common or representative proof, whether a market-conditions adjustment included depreciation of non-material items, much less the value of that depreciation. Individualized claims-adjustment evidence would therefore be necessary in *each* instance of market-conditions adjustments.  This alone defeats certification. *See Brasher v. Allstate Indem. Co.*, 2020 WL 4673259 at \*6, \*12–14 (N.D. Ala. Aug. 12, 2020).

20

For its part, the district court tried to skate past this issue by modifying the class definition to "exclude any depreciation attributed to market conditions for that subset of claimants who received no ACV because the estimate was less than their policy deductible." Dkt. 196, at 16. That revision, however, ignores the actual issue: that, as a matter of *fact*, market-conditions depreciation cannot be quantified and "excluded" from fair-market-value calculations simply by pushing a button.

### CONCLUSION & PRAYER

This Court should grant this Petition and reverse the district court's order certifying the class.

Respectfully submitted,

*/s/ Cassie J. Dallas*
Roger D. Higgins
Texas Bar No. 09601500
John M. Wiggins
Cassie J. Dallas
Texas Bar No. 24074105
Texas Bar No. 24115950
THOMPSON, COE, COUSINS, & IRONS LLP
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
Tel: (214) 871-8200
Fax: (214) 871-8209
rhiggins@thompsoncoe.com
jwiggins@thompsoncoe.com
cdallas@thompsoncoe.com

Mark D. Taticchi
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Tel: (215) 988-2700
Fax: (215) 988-2767
Mark.Taticchi@faegredrinker.com

**ATTORNEYS FOR PETITIONERS-DEFENDANTS**

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the type-volume limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by 5th Cir. R. 28.2.1:

✓ This document contains 5,178 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

✓ This document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

*/s/ Cassie J. Dallas*
Cassie J. Dallas

## CERTIFICATE OF CONFERENCE

Pursuant to 5th Cir. R. 27.4, Defendants-Appellants' counsel of record John Wiggins contacted Plaintiffs-Appellees' counsel of record Erik Peterson who indicated that all Plaintiffs-Appellees oppose the relief sought and intend to file an opposition.

*/s/ Cassie J. Dallas*
Cassie J. Dallas

23

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of April, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The below counsel will be served by electronic mail and regular mail in accordance with the Federal Rules of Appellate Procedure.

J. Brandon McWherter
MCWHERTER SCOTT & BOBBITT PLC
109 Westpark Drive, Suite 260
Brentwood, TN 37067
Email:  brandon@msb.law

Shaun W. Hodge
THE HODGE LAW FIRM, PLLC
The Historic Runge House
1301 Market Street
Galveston, TX 77550
Email:  shodge@hodgefirm.com

Erik D. Peterson
ERIK PETERSON LAW OFFICES, PSC
110 W. Vine Street, Suite 300
Lexington, KY 40507
Email:  erik@eplo.law

T. Joseph Snodgrass
SNODGRASS LAW LLC
100 South 5th Street, Suite 800
Minneapolis, MN 55402
Email:  jsnodgrass@snodgrass-law.com

*/s/ Cassie J. Dallas*
Cassie J. Dallas

24

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES SIMS, TERRIE SIMS, NEAL COMEAU, LILLIANA COMEAU, and JENIFER SIDDALL, JON HOWELL, TERRY DUHON, Individually and on Behalf of Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, and ALLSTATE INDEMNITY COMPANY,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § | SA-22-CV-580-JKP (HJB) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Jason K. Pulliam:**

Before the Court is Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel. (Docket Entry 138.) The District Court has referred the motion to the undersigned, pursuant to 28 U.S.C. § 636(b). (*See* Docket Entry 183.) Defendants have filed a response in opposition to class certification (*see* Docket Entry 147) and Plaintiffs have replied. (*See* Docket Entry 168.) For the reasons set out below, I recommend that Plaintiffs' motion (Docket Entry 138) be **GRANTED IN PART**, and that a class be certified under Federal Rule of Civil Procedure 23.

**I.       Jurisdiction.**

The Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). "CAFA provides the federal district courts with

original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000." *Stewart v. Entergy Corp.*, 35 F.4th 930, 932 (5th Cir. 2022) (citation modified). Parties are minimally diverse when "at least one class member is a citizen of a State different from [any] defendant." *Turner v. GoAuto Ins. Co.*, 33 F.4th 214, 216 (5th Cir. 2022).

The requirements of CAFA jurisdiction are satisfied here. The proposed class consists of 30,000–40,000 insurance claimants. (*See* Docket Entry 138-13, at 14, 18; Docket Entry 195, at 12.) And minimal diversity is satisfied, as Plaintiffs are Texas citizens, and Defendants are citizens of Illinois. (*See* Docket Entry 92, at 4–5.) The amount in controversy is also satisfied; Plaintiffs have shown that, on average, the amount of each claim at issue is $760.61. (*See* Docket Entry 138, at 17; Docket Entry 138-13, at 17.) Based on these figures, the amount in controversy, exclusive of interest and costs, likely exceeds $22 million.

## II. Background.[1]

Plaintiffs and the prospective class members purchased individual homeowner's insurance policies from Defendants. They all incurred damage to their homes and submitted claims for coverage. The parties do not dispute coverage. The only dispute is whether Defendants breached the policies by withholding non-material depreciation in calculating initial payments for the covered losses.

Under the policies, payments for covered losses follow a two-step process. First, Defendants pay the actual cash value ("ACV") of the covered loss. Second, if the policyholder

---

[1] The facts in this section are largely taken directly from the District Court's Memorandum Opinion and Order denying Defendants' motion for summary judgment. *See Sims v. Allstate Fire & Cas. Ins. Co.*, No. SA-22-CV-580-JKP, 2025 WL 2524137, at *1–2 (W.D. Tex. Sept. 2, 2025).

chooses to repair or replace the damaged property, the policyholder may seek additional reimbursement for the actual cost of those repairs—*i.e.*, the replacement cost value ("RCV").

Under each of Plaintiffs' and prospective class members' policies, the ACV payment may include a deduction for depreciation; the policies provide no definition for either "ACV" or "depreciation." The dispute at the heart of this case is whether Defendants violated the policies when they calculated the ACV owed for covered losses by deducting both material and non-material depreciation from the estimated cost to repair or replace the damaged property.

Plaintiffs James and Terrie Sims, Neal and Liliana Comeau, and Jenifer Siddall (the "Original Plaintiffs") filed a class-action complaint on June 2, 2022. (*See* Docket Entry 1.) With the Court's permission, they filed a second amended and supplemental class action complaint on May 8, 2024, joining Plaintiffs Jon Howell and Terry Duhon (the "New Plaintiffs") to the case. (*See* Docket Entry 92.) Plaintiffs now move to certify a class of all Texas policyholders from whom Defendants withheld non-material depreciation when calculating ACV payments. (*See* Docket Entry 138.)

Plaintiffs move to certify the following class:

> All Allstate Fire, Allstate Vehicle, and Allstate Indemnity personal lines policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Texas; and (2) for which Allstate accepted coverage and then chose to calculate ACV exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and (3) which resulted in an ACV payment during the class period from which "non-material depreciation" was withheld from the policyholder; or which would have resulted in an ACV payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible.

(Docket Entry 138, at 6.) For purposes of the class, Plaintiffs define "non-material depreciation" as "the application of 'depreciate removal,' 'depreciate non-material' and/or 'depreciate O&P' option settings within Xactimate® software." (*Id.*)[2]

## III. Discussion.

Plaintiffs, "as the parties seeking certification, bear the burden of proof to establish that the proposed class satisfies the requirements" of Federal Rule of Civil Procedure 23. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). In deciding whether Plaintiffs have met that burden, the Court "must conduct a rigorous analysis of the Rule 23 prerequisites," looking "beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination." *Yates v. Collier*, 868 F.3d 354, 362 (5th Cir. 2017). Despite the rigor of the analysis required, the Court retains "significant leeway and discretion" to "modify the class[] to fit the requirements better and should not dismiss an action purely because the proposed class definition is too broad." *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933–34 (5th Cir. 2023). "District courts are permitted to limit or modify class definitions to provide the necessary precision." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004).

To show that the class should be certified, Plaintiffs must first satisfy the requirements of Rule 23(a): "numerosity, commonality, typicality, and adequacy of representation." *Braidwood Mgmt.*, 70 F.4th at 933. Additionally, Plaintiffs "must show that their proposed class[] satisf[ies]

---

[2] In their second amended complaint, Plaintiffs also use this definition regarding improper depreciation of *labor*. Plaintiffs explicitly define "labor" as any "intangible non-materials," specifically including "labor costs . . . equipment costs . . . overhead and profit [*i.e.*, O&P] . . . as well as removal costs . . . under commercial claims estimating software [*i.e.*, Xactimate®]." (Docket Entry 92, at 14.)

at least one of the three requirements listed in Rule 23(b)." *Id.*[3] This Report and Recommendation first addresses the Rule 23(a) factors before turning to Rule 23(b).

### A. *The 23(a) factors.*

As noted above, there are four threshold requirements under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claim or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). In this case Defendants do not dispute numerosity (*see* Docket Entry 195, at 94), which is easily satisfied by the 30,000–40,000 claims in the proposed class (*see* Docket Entry 138-13, at 14, 18; Docket Entry 195, at 12). Nor do they challenge commonality, which is also satisfied, inasmuch as Plaintiffs and the prospective class members all challenge Defendants' depreciation of non-materials in calculating ACV. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("For purposes of Rule 23(a)(2) even a single common question will do.").

Defendants do contend, however, that neither typicality nor adequacy are satisfied. (*See* Docket Entry 147, at 37.) They argue that none of the Plaintiffs satisfy the typicality requirement, and that the Original Plaintiffs fail to satisfy the adequacy requirement. (*See id.* at 37–42.)

---

[3] "The Fifth Circuit has also articulated an 'ascertainability' requirement." *Braidwood Mgmt.*, 70 F.4th at 933. "The touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *A. A. by & through P.A. v. Phillips*, No. 21-30580, 2023 WL 334010, at *2 (5th Cir. Jan. 20, 2023) (citation modified); *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, 349 F.R.D. 106, 120 (E.D. La. 2025). Defendants have stipulated that it would be "administratively feasible" to provide a list of relevant policyholders "should the Court grant class certification." (*See* Docket Entry 41, at 3; Docket Entry 195, at 66.) In light of Defendants' stipulation, the Fifth Circuit's ascertainability requirement is satisfied here.

1. *Typicality.*

Typicality is satisfied so long as "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The test for typicality 'is not demanding.'" *In re Cassava Scis., Inc. Sec. Litig.*, 350 F.R.D. 91, 106 (W.D. Tex. 2025) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999)). It simply requires a "similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Thus, "[a] complete identity of claims is not required." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023). Instead, it is enough that the Plaintiffs' "claims have the same essential characteristics of those of the putative class." *Id.* "If the claims arise from a similar course of conduct and share the same legal theory," in other words, "factual differences will not defeat typicality." *Id.*

Typicality is easily met here. The named Plaintiffs and all of the prospective members of the proposed class are current or former homeowners insurance policyholders from whom Defendants withheld non-material depreciation when calculating ACV. Thus, "[t]he course of conduct here is virtually the same across" the board. *Angell*, 67 F.4th at 737. And all of the claims "turn on the interpretation and application of a standard, non-negotiated, form contract." *Page v. State Farm Life Ins. Co.*, 584 F. Supp. 3d 200, 220 (W.D. Tex. 2022). Thus, the Plaintiffs' claims and the proposed class members' claims "have the same essential characteristics," "arise from a similar course of conduct," and "share the same legal theory." *Angell*, 67 F.4th at 736. Plaintiffs therefore have satisfied the typicality requirement.

Defendants' arguments against a finding of typicality fail. Regarding the Original Plaintiffs, Defendants assert that their claims are not typical of the proposed class because they

6

"engaged in appraisal." (Docket Entry 147, at 40.) But Defendants do not explain why participation in appraisal renders their claims atypical. Nor does it cite any legal authority that would support such a conclusion.

As for the New Plaintiffs, Defendants argue that their claims are atypical because they "are barred by contractual limitations." (*Id.* at 41.) In support of this assertion, Defendants point to policy language which provides that "[n]o one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought . . . unless . . . the action is commenced within two years and one day from the date the cause of action first accrues." (Docket Entry 90-2, at 37; Docket Entry 90-3, at 38.) The policies do not define the term "action"; under the term's ordinary meaning, a class action certainly qualifies. *See Action*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining term as "any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree.") (emphasis added). This class action was filed on June 2, 2022 (*see* Docket Entry 1)—well before the New Plaintiffs' contractual limitations deadline (*see* Docket Entry 147, at 42). It makes no difference, moreover, when the New Plaintiffs joined this action, as "the commencement of the action satisfie[s] the purpose of the limitation provision as to all those who subsequently participate in the suit as well as for the named plaintiffs." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 551 (1974).[4]

For all the above reasons, the typicality requirement is satisfied in this case.

---

[4] *American Pipe* addressed tolling principles in the context of *statutory* limitations, whereas Defendants make an argument based on *contractual* limitations. The distinction does not change the result: "The filing of a class action . . . commences the suit for the entire class for the purpose of . . . contractual and statutory limitations . . . whether or not each member of the class is cognizant of the action." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

7

2. *Adequacy.*

Defendants argue that the Original Plaintiffs are not adequate representatives of the class because their individual claims seek much larger recoveries than the claims they share with proposed class members. In Defendants' view, the Original Plaintiffs have a financial motive for pursuing their individual claims that is much stronger than for the class claims. (Docket Entry 147, at 38–40.) In support of this argument, Defendants point to deposition testimony from the Original Plaintiffs affirming that they are seeking to recover between $80,000 and $212,000 for their individual claims, respectively. (*Id.* at 38–39.) And Defendants rely on an unpublished case from the Southern District of Ohio that found that a "significant disparity in financial incentives between the representative and individual" claims "suggest[ed] that the individualized elements of the [named plaintiffs' claims] w[ould] disproportionately influence their decisions throughout litigation, compromising their loyalty to the class." *Goble v. Trumbull Ins. Co.*, No. 2:20-CV-5577, 2023 WL 9050956, at *6 (S.D. Ohio Dec. 29, 2023).

*Goble* is distinguishable. In that case, the district court did not rely solely on disparity in the value of claims, but it also emphasized that the plaintiffs had "expressed indifference" toward the class claims, testifying that they "had no relevance" and were "inconsequential." 2023 WL 9050956, at *6. Moreover, the plaintiffs had "expressed doubt" about their "ability to be . . . adequate representative[s]." *Id.* Here, there is no similar indication that Plaintiffs view their class claims with derision or harbor reservations about their role as class representatives. To the contrary, they have demonstrated a commitment to the class throughout this litigation, especially considering their refusal to accept generous settlement offers. *Cf. Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *18 (11th Cir. Aug. 30, 2023) ("[Named plaintiff's] reject[ion of] several generous settlement offers . . . . reflect[s] [his] interest . . . in obtaining relief

8

for the class."); *Fernandez v. RentGrow, Inc.*, 341 F.R.D. 174, 205 (D. Md. 2022) ("[Named plaintiff] has shown that he is committed to the vigorous prosecution of this case . . . . [by] reject[ing] more than one settlement offer that would have served his interests but would not have achieved relief for many potential absent class members."), *vacated on other grounds*, 116 F.4th 288 (4th Cir. 2024).

In short, all Plaintiffs are adequate representatives for the proposed class.

## B. *The 23(b) factors.*

Even when the prerequisites of Rule 23(a) are satisfied, a class action still may not be certified unless it satisfies "at least one of the three requirements listed in Rule 23(b)." *Braidwood Mgmt.*, 70 F.4th at 933. In this case, Plaintiffs contend that certification is warranted under Rule 23(b)(3), which permits certification when (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance and superiority inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Page*, 584 F. Supp. 3d at 220 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Defendants contend that neither factor is satisfied, precluding certification. (*See* Docket Entry147, at 12, 35.)

### 1. *Predominance.*

"In determining predominance, the district court must 'give careful scrutiny to the relation between common and individual questions in a case.'" *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 710 (5th Cir. 2020) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same

9

evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Mitchell*, 954 F.3d at 710 (quoting *Bouaphakeo*, 577 U.S. at 453). The predominance inquiry, then, "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Bouaphakeo*, 577 U.S. at 453. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* at 453–54 (quoting 7AA WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1778, pp. 123–24 (3d. ed. 2025)).

Plaintiffs argue that predominance is satisfied here because the case turns "on a single, predominating question: whether, as a matter of law, Defendants breached their standard-form policies by withholding labor as depreciation." (Docket Entry 138, at 14.) This argument is well taken. Indeed, as in other insurance cases where predominance was deemed satisfied, this is a case the Plaintiffs are alleging virtually identical breaches of virtually identical provisions in virtually identical insurance policies. *See, e.g.*, *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 555 (W.D. Tex. 2020) (finding predominance satisfied where alleged breaches of "form contracts" were "materially identical throughout the class"); *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 563 (N.D. Miss. 2018) (finding predominance satisfied where focus of class claims was "the policy entered into between [Insurer] and members of the proposed class; a policy which d[id] not specify that labor depreciation would be deducted in calculating the [ACV]"), *aff'd*, 954 F.3d 700 (5th Cir. 2020).

10

Defendants counter Plaintiffs' arguments by raising two issues that, in their opinion, require that the predominance issue be resolved in their favor: the de facto definition of ACV as "fair market value," and the impact of "market conditions" on the depreciation deductions made. Defendants also assert that the potential of affirmative defenses affects the predominance inquiry. None of these arguments defeat predominance; however, the first two both suggest that minor modifications should be made to the proposed class definition.

    a.   Fair market value.

Defendants do not dispute that the Plaintiffs and the prospective class members all received ACV payments that withheld non-material depreciation. However, they argue that the liability question is not identical across the class because proof of damages is an essential element of each class-members' breach-of-contract claim, and "Plaintiffs have no way of establishing, with proof common to the class, which class-members were or were not underpaid ACV." (Docket Entry 147 at 13–15.)[5] Defendants' argument on this score hinges on the fact that ACV is not defined in the policies. Thus, Defendants argue, the meaning of ACV across the class is "fair market value." (Docket Entry 147, at 16.) That much is certainly true in Texas. *See Sims v. Allstate Fire & Cas. Ins. Co.*, 746 F. Supp. 3d 417, 425 (W.D. Tex. 2024) ("Under Texas law, the term 'actual cash

---

[5] The undersigned construes Defendants' argument to go to the issue of whether Plaintiffs can prove the *element* of damages, not the specific *amount* of damages to which each class member would be entitled. Questions as to the amount of damages do not affect the predominance inquiry. *See, e.g.*, 2 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 4:54 (6th ed. 2022) ("[C]ourts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations."); *Bouaphakeo*, 577 U.S. at 453 (explaining that predominance may be satisfied "even though other important matters will have to be tried separately, such as damages. . . ."); *Mitchell*, 954 F.3d at 710–11 ("The necessity of calculating damages on an individual basis will not necessarily preclude class certification."); *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) ("[N]othing . . . mandates a formula for classwide measurement of damages.").

value' is interpreted to be synonymous with 'fair market value.'") (quoting *McKee v. Chubb Lloyds Ins. Co. of Tex.*, No. SA-22-CV-1110-XR, 2024 WL 1161391, at *5 (W.D. Tex. Mar. 15, 2024) (collecting cases), *report and recommendation adopted*, No. SA-22-CV-1110-XR, 2024 WL 2720450 (W.D. Tex. May 28, 2024).

However, Defendants mistakenly suggest that a fair-market-value definition of ACV means that it cannot be calculated across the class using Plaintiffs' proposed formula of "repair cost less depreciation" ("RCLD"). Plaintiffs' proposed class definition singles out claims for which Defendants "chose to calculate ACV exclusively pursuant to the [RCLD] methodology." (Docket Entry 138, at 6.) (Docket Entry 147, at 16, 20.) This definition comports with the policies and Texas law. While Texas law defines ACV as "fair market value," it also measures fair market value as, *inter alia*, "the cost of repair or replacement less depreciation." *Sims*, 746 F. Supp. 3d at 425 (quoting McKee, 2024 WL 1161391, at *5). Thus, Defendants are correct that ACV means fair market value, but incorrect that RCLD fails to capture fair market value, and hence ACV.

And while there are other potential ways of calculating ACV, Defendants did, as a matter of fact, calculate ACV using the RCLD methodology. For instance, in its November 2, 2022, motion to dismiss, Defendants pointed out that ACV "is synonymous with 'fair market value,'" but conceded that they calculated the ACV payments in this case using the RCLD methodology. (*See* Docket Entry 17, at 17–22.) Since then, Defendants' corporate representative has testified that "in the state of Texas, [Allstate] calculates ACV by taking the estimated replacement cost and subtracting depreciation." (Docket Entry 138-2, at 3.) Aware of these prior arguments and sworn testimony, Defendants argue that "[w]aiver and estoppel" cannot be used "to change, rewrite[,] [or] enlarge the risks covered by a policy." (Docket Entry 147, at 29.) But there is no rewriting in this case. As a matter of Texas law, ACV can be calculated as RCLD, and the record evidence

clearly demonstrates that Defendants did, in fact, use RCLD when calculating the ACV it owed to Plaintiffs and the prospective class members.[6]

Once the issue of fair market value and RCLD is resolved, Defendants' argument is defeated, and Plaintiffs' methodology for calculating ACV is a sufficient "way of establishing, with proof common to the class, which class-members were or were not underpaid." (Docket Entry 147 at 15.) The class in this case is defined to include only those policyholders who either received an "ACV payment during the class period from which 'non-material depreciation' was withheld" or who would have received "an ACV payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible." (Docket Entry 138, at 6.) That is, it limits the class to individuals who did, in fact, suffer damages—either because they were underpaid ACV or were paid no ACV at all—as a result of Defendants' depreciating non-materials in making their RCLD calculations. And according to the deposition testimony of Defendants' corporate representative, the amount of non-material depreciation withheld from every class member's ACV calculation can be readily identified using "Next-Gen software and Xactimate software." (Docket Entry 138-2, at 9.) And both Plaintiffs' expert and Defendants' corporate representative have confirmed that the policyholders who fall within that class definition can be identified using Xactimate® and related software. (*See, e.g.*, Docket Entry 138-13, at 20 ("[D]etermining the amount of withheld non-material depreciation is a simple function of toggling the check-box in the depreciation boxes [of the Xactimate® software]."); Docket Entry 138-2, at

---

[6] Indeed, if Defendants were correct that RCLD is not a basis for calculating ACV, it would effectively be an admission that it made *no attempts* to pay ACV on any claims—since it did, in fact, use the RCLD methodology and no other. (*See* Docket Entry 138-2, at 3 ("Q: As a matter of fact and not legal theory, is it true that [Defendants], for structural claims in the state of Texas, calculate[] ACV by taking the estimated replacement cost and subtracting depreciation? . . . . A: Yes, that's correct.").)

9 ("There's no issue with accessing th[e] data . . . . [for] determin[ing] the amounts of still withheld non-material depreciation.").)  Accordingly, Defendants' fair-market value argument does not defeat predominance.

The fair-market-value issue does, however, require a slight modification of Plaintiffs' proposed class.  The class definition singles out claims for which Defendants' "chose to calculate ACV exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, *such as fair market value*."  (Docket Entry 138, at 6 (emphasis added).)  Of course, as discussed at length above, RCLD is a methodology for calculating fair market value, and it happens to be the one actually used by Defendants to calculate ACV for claims in Texas.  *See supra*.  Accordingly, to properly identify the class for certification, the class definition should be modified to omit the words: "such as fair market value."  *See Braidwood Mgmt.*, 70 F.4th at 933 ("[T]he district court has wide discretion when defining and modifying classes."); *Monumental Life Ins.*, 365 F.3d at 414 (explaining that courts may "limit or modify class definitions to provide the necessary precision.").

### b.  Market conditions.

Defendants also argue that predominance is defeated by its practice of depreciating ACV based on "market conditions."  (*See* Docket Entry 147, at 30–34.)  According to Defendants, this is so because its Xactimate® profile is designed in such a way that all cost increases attributable to market conditions—whether they are increases in material costs or in non-material costs—are categorized as *non*-materials.  (*Id.* at 30–31.)  In theory, then, depreciation of market conditions in ACV calculations might reflect increases solely in *material* costs—costs which Plaintiffs do not claim that Defendants could not depreciate under their policies.  According to Defendants, about 25 percent of the roughly 40,000 prospective class claims had ACVs that included depreciation

14

based on market-condition adjustments to either material or non-material costs, thus exposing a quarter of the class claims to this co-mingling problem. (*See id.* at 31.)

Defendants' argument does not defeat predominance. The vast majority of the proposed class are unaffected by the potential co-mingling of material and non-material depreciation based on "market conditions" adjustments. The issue does not apply to the 75 percent of prospective class members whose ACV estimates did not include market-condition depreciation. Even for those prospective class members whose ACV estimates did include market-condition depreciation, the issue does not arise if they ultimately received an ACV payment, albeit less than they would have received had non-material depreciation not been withheld. For such claimants, Defendants' co-mingling of material and non-material costs under the market-conditions umbrella does not call into doubt whether they incurred *any* damages; it merely raises questions about the precise *amount* of damages, which, as noted above, has no bearing on the predominance inquiry. *See supra*.

Accordingly, the issue raised by Defendants applies only to that subset of prospective class members whose ACV estimates included depreciated market conditions, and who did not receive an ACV payment because the estimates were less than their deductibles. Depending on the amount withheld as material market-condition depreciation, it is conceivable that some of those claimants may fall within the class definition but actually have no damages—if the only reason they received no ACV was because increases in *material* costs were depreciated as a "market condition." It is not clear how many (if any) prospective class members might fall into this category. Even so, the issue may be resolved by modification of the class definition to exclude any depreciation attributed to market conditions for that subset of claimants who received no ACV because the estimate was less than their policy deductible. To accomplish this, market conditions for that category of claimants could be *backed out* of the ACV estimates to match such a modified class definition.

15

(*See* Docket Entry 168, at 16; Docket Entry 195, at 34, 83.) Applying this modified definition would not be complicated, as "Xactware can produce a data report showing the value of depreciation applied to market condition price adjustments," and those amounts "could be deducted from the amount[s] of total non-material depreciation calculated." (Docket Entry 138-14, at 5.) Defendants even concede that "market conditions can be backed out," albeit not solely "the material ones." (Docket Entry 195 at 86–87.)

Thus, while Defendants' market-conditions argument does not defeat predominance or defeat class certification, it does require modification of Plaintiffs' class-specific definition of "non-material depreciation" to expressly *exclude* any depreciation based on market conditions for the category of prospective class members who received no ACV payment because the RCLD estimate was smaller than their policy deductibles. *See Braidwood Mgmt.*, 70 F.4th at 933 *Monumental Life Ins.*, 365 F.3d at 414.

### c. Affirmative defenses.

Lastly, Defendants argue that "potential affirmative defenses" it may wish to assert against individual class members—which it vaguely references as including "payment, accord and satisfaction, failure to comply with proof of loss, application of sub-limits or exclusion not expressible in date workbooks, etc."—ought to defeat predominance. (Docket Entry 147, at 28.) But "affirmative defenses . . . rarely defeat class certification." 2 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 4:57. As the Supreme Court has explained:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as . . . *affirmative defenses peculiar to some individual class members*.

*Bouaphakeo*, 577 U.S. at 453 (citation modified) (emphasis added). Here, Defendants' "potential" affirmative defenses are entirely speculative. "Speculation alone does not defeat predominance."

*Generation Changers Church v. Church Mut. Ins. Co.*, 693 F. Supp. 3d 795, 820 (M.D. Tenn. 2023) (quoting *In re Tivity Health, Inc.*, No. 20-0501, 2020 WL 4218743, at *1 (6th Cir. July 23, 2020)). In sum, the possibility that Defendants "may have valid affirmative defenses against some unknown number of class members does not defeat certification." *Siringi v. Parkway Fam. Mazda/Kia*, 349 F.R.D. 641, 646 (S.D. Tex. 2023) (Rosenthal, J.). Accordingly, the predominance requirement is satisfied.

> 2. *Superiority*.

"[T]he most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit." *Mitchell*, 327 F.R.D. at 564 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)). "A negative value suit is one in which the stakes to each member are too slight to repay the cost of the suit." *Mitchell*, 327 F.R.D. at 564 (citation modified). In a largely identical case—*i.e.*, one turning on whether the insurer "breached its contracts by depreciating labor costs"—the Fifth Circuit emphatically affirmed the district court's superiority finding *solely* because the class consisted of "over 10,000 relevant claims . . . that [we]re likely to be too small to engage in separate litigation." *Mitchell*, 954 F.3d at 711–12.

The same logic applies here. Plaintiffs' proposed class consists of 30,000–40,000[7] claims that are likely of too little value to be tried separately. And "certification will benefit all of the thousands of class members who, without the assistance of an attorney, would [probably] remain oblivious to their alleged injuries." *Page*, 584 F. Supp. 3d at 224. Accordingly, "the negative-value nature of the claims in this case establishes superiority of the class action." *Mitchell*, 954 F.3d at 712.

---

[7] While the parties have identified roughly 40,000 claims, market conditions were depreciated for about 10,000 of them. Thus, it is unclear how many of those 10,000 claims will still have damages—and hence remain part of the class—once market conditions are backed out.

## IV. Conclusion and Recommendation.

Based on the foregoing, I find that the Rule 23 factors have been met and I therefore recommend that Plaintiffs Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (Docket Entry 138) be **GRANTED IN PART**. Plaintiffs' proposed class definition should be modified to (1) omit inaccurate language about "fair market value" and (2) carve out depreciation of market conditions from the definition of non-material depreciation for the subset of prospective class members who received no ACV payment because their RCLD estimates were less than their policies' deductibles.

Accordingly, I recommend that the Court **CERTIFY** the following modified class:

> All Allstate Fire, Allstate Vehicle, and Allstate Indemnity personal lines policyholders (or their lawful assignees) who (1) made a structural damage claim for property located in Texas, (2) for which Allstate accepted coverage and calculated ACV pursuant to the replacement cost less depreciation methodology, and (3) which resulted in an ACV payment during the class period from which "non-material depreciation" was withheld from the policyholder; or which would have resulted in an ACV payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, (4) where non-material depreciation is defined as "the application of 'depreciate removal,' 'depreciate non-material' and/or 'depreciate O&P' option settings with Xactimate® software,"—excluding any depreciation, however, attributed to market conditions for those claimants who received no ACV payment.[8]

---

[8] The undersigned notes that the recommended exclusion singles out a subset of a subset of insurance claimants who potentially would be eligible for relief. Of the subset of claimants who received no ACV payment because of Defendants' improper depreciation, this language excludes a subset whose ACV estimates depreciated market conditions. Although it appears that 25% of the entire class may have received market-conditions depreciation, the parties have not addressed how many individuals might actually fall into this subset-of-a-subset.

Should it appear that very few individuals actually fall into this subset, it is conceivable that their ACV estimates could be personally reviewed with little burden, and if the *material* market condition depreciation could be reliably separated from the *non-material* market condition depreciation, then the Court could grant Plaintiffs an opportunity to seek leave to amend the class definition once more, to include those individuals who received no ACV payment solely as a result

## V. **Notice of Right to Object.**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Report and Recommendation must be filed within **14 days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Servicing LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

---

of Defendants' depreciation of *non-material* market conditions. However, the Court need not address this potential issue at this time, as the class may be certified with or without this added subset.

**SIGNED** on January 20, 2026.

Henry J. Bemporad
United States Magistrate Judge

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

JAMES SIMS, TERRIE SIMS, NEAL
COMEAU, LILIANA COMEAU, JE-
NIFER SIDDAL, JON HOWELL,
TERRY DUHON, INDIVIDUALLY
AND ON BEHALF OF OTHER'S SIM-
ILARLY SITUATED;

   *Plaintiffs*,

**v.**

                    **Case No.  SA-22-CV-00580-JKP**

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY, ALLSTATE
VEHICLE AND PROPERTY INSUR-
ANCE COMPANY, ALLSTATE IN-
DEMNITY COMPANY,

   *Defendants*.

## O R D E R

Before the Court is Defendants' (Allstate) Objections to the Report and Recommendation

addressing Plaintiffs' Motion for Class Certification and Plaintiffs' Response to the Objections.

*ECF No. 201, 206*; *see also ECF Nos. 138,147, 196*. Upon consideration, the Court adopts the

Report and Recommendation in its entirety. Accordingly, the Court **CERTIFIES** the following

class:

> All Allstate Fire, Allstate Vehicle, and Allstate Indemnity personal lines policy-
> holders (or their lawful assignees) who (1) made a structural damage claim for
> property located in Texas, (2) for which Allstate accepted coverage and calculated
> ACV pursuant to the replacement cost less depreciation methodology, and (3)
> which resulted in an ACV payment during the class period from which "non-
> material depreciation" was withheld from the policyholder; or which would have
> resulted in an ACV payment but for the withholding of non-material depreciation
> causing the loss to drop below the applicable deductible, (4) where non-material
> depreciation is defined as "the application of 'depreciate removal,' 'depreciate
> non-material' and/or 'depreciate O&P' option settings with Xactimate® soft-

ware,"—excluding any depreciation, however, attributed to market conditions for those claimants who received no ACV payment.

## Standard of Review

A party who timely files specific, written objections to a magistrate judge's Report and Recommendation is entitled to a *de novo* determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3). Any portions of the Magistrate Judge's findings or recommendations that were not objected to are reviewed for clear error. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989), *cert. denied*, 492 U.S. 918 (1989).

An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and must state the basis for such objections. *Mayberry v. Davis,* 608 F.2d 1070, 1072 (5th Cir. 1979). "Frivolous, conclusive or general objections need not be considered by the district court." *Id*.; *Williams v. Lakeview Loan Servicing LLC*, 694 F.Supp.3d 874, 881 (S.D. Tex. 2023). A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge. *Mayberry,* 608 F.2d at 1072; *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). Similarly, an objection that does nothing more than state a disagreement with the Magistrate Judge's recommendation is not sufficient to present grounds for review. *Id*.; *Talbert v. Lynch*, No. 16-CV-00018, 2017 WL 11236935, at *4–5 (W.D. Tex. Feb. 17, 2017).

## Discussion

### 1. Challenge to Article III Standing

Allstate begins by challenging Plaintiffs' Article III standing to bring suit, stating, "[t]he R&R fails to address that Plaintiffs and most of the Class lack standing." Specifically, Allstate

contends the "interest-only Plaintiffs and at least 50% of the . . . proposed class cannot show injury-in-fact, and therefore, lack standing under Article III." Allstate also contends the "appraisal plaintiffs cannot show harm and have no redressable injury." Allstate raised these arguments previously as basis for summary judgment. *See ECF Nos. 180-182*. However, Allstate now presents these arguments as jurisdictional challenges, raised for the first time in this Objection to the Report and Recommendation. Because these arguments present challenges to the Court's jurisdiction, the Court will address them.

### A. Interest-Only Plaintiffs

In the interest of addressing all challenges to this Court's jurisdiction, the Court construes Allstate's argument broadly to contend this Court lacks jurisdiction because Allstate tendered payment to the named "Interest-Only Plaintiffs" for the full amount to which they are entitled for their losses under the terms of their respective insurance policies. Due to this tender of full payment, Allstate contends no plaintiff suffered any harm as a result of any alleged wrongful pre-appraisal adjustment of their insurance claims. Allstate contends the Magistrate Judge erred by recommending and designating class certification while assuming the "Interest-Only Plaintiffs" had standing to bring suit.

Article III of the United States Constitution limits federal-court jurisdiction to actual cases and controversies and requires that parties demonstrate they have a legally cognizable interest or personal stake in the outcome of the case. U.S. Const. art. III, § 2, cl. 1; *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 71 (2013). A plaintiff's standing to bring suit pertains to the issue whether "the plaintiff is entitled to have the court decide the merits of the dispute or of particular issues." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869,874 (5th Cir. 2000)(citing *Cook v. Reno*, 74 F.3d 97, 98–99 (5th Cir. 1996))). Thus "[s]tanding is a jurisdictional requirement that

focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Pederson*, 213 F.3d at 869; *see also Doe 1 v. Baylor Univ.*, Civil Action No. 6:16-CV-173-RP, 2020 WL 1557742, at *2 (W.D. Tex. Apr. 1, 2020).

Plaintiffs have Article III standing to sue if: (i) they suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) the injury was likely caused by the defendant; and (iii) the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Payne v. Progressive Fin. Services, Inc.*, 748 F.3d 605, 607 (5th Cir. 2014). A live controversy must exist at every stage of the litigation. *Genesis Healthcare Corp.*, 569 U.S. at 71; *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 831 (5th Cir. 2023). If an intervening circumstance at any point during litigation deprives a plaintiff of a personal stake in the outcome of the action or makes it impossible for the court to grant any effectual relief, the case must be dismissed as moot. *Id*. "Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).' Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)(quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980)).

As long as the parties have a concrete interest, however small, in the outcome of the litigation, the party does not lose standing. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (citing *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)); *see also Glasner v. Am. Econ. Ins. Co.*, No. 21-CV-11047, 2026 WL 395006, at *7 (D. Mass. Feb. 12, 2026). Any deprivation of money owed under a contract constitutes a concrete injury sufficient to satisfy standing under Article III. *Id*. Thus, subsequent events, such as, payment of replacement cost value (RCV) of an

4

insured loss, appraisal awards, or settlement offers, cannot retroactively eliminate the initial injury. *See Cortinas v. Liberty Mut. Pers. Ins. Co.*, No. SA-22-CV-544, 2025 WL 233589, at \*4-5 (W.D. Tex. Jan. 13, 2025), report and recommendation adopted, 2025 WL 1062093 (Apr. 8, 2025).

In *Cortinas*, the Court discussed the class-representative plaintiffs' Article III standing within the context of the defendant's motion for summary judgment. In that context, the Court thoroughly discussed the issue whether "a tender of full RCV payment to the named Plaintiffs would deprive them of [Article III] standing to continue as class representatives, thereby mooting the class action. *Id*. at \*4.[1] The Court held "the Fifth Circuit has 'expressed concern for defendant-induced mootness in the class action context where defendants may attempt to 'pick off' individual plaintiffs before class certification '[b]y tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action.'" *Id*. (quoting *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 315 (5th Cir. 2015) and *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir. Unit A July 1981)).

Similarly, under these facts, the alleged breach of contract occurred when Allstate calculated and submitted initial ACV payments to the insured plaintiffs after depreciating and deducting from this payout what the parties term as "non-material labor" or "non-material depreciation." This depreciation resulted in immediate economic harm to the insureds. As in *Cortinas*, Plaintiffs maintain Article III standing, still, because they have an ongoing financial interest in

---

[1] This Court recognizes the confusion caused by use of the term "standing" in different contexts in cases brought as potential class actions. In such cases, the plaintiff must possess "standing" under Article III to assert a cause of action based on their own alleged injuries (jurisdictional standing). The same plaintiff must suffer the same injury as potential class members to have "standing" pursuant to Federal Rule 23 to maintain a class-action and act as the class representative. *See Williams v. Steward Health Care Sys., LLC*, No. 5:20CV123, 2021 WL 7629734, at \*42 (E.D. Tex. Dec. 16, 2021), report and recommendation adopted, 2022 WL 575939 (E.D. Tex. Feb. 25, 2022) (citing *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550 (5th Cir. 1998), and quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216 (1974)). This Court addresses Allstate's challenge to Plaintiffs' Article III standing here. Later, in Section 2, the Court addresses Allstate's objections to the Report and Recommendation pertaining to Plaintiffs' standing to act as class representatives pursuant to Federal Rule 23.

seeking service awards for their roles as class representatives. *Cortinas*, 2025 WL 233589, at \*5. The possibility of a service award is enough for the class representatives to maintain a justiciable interest in the outcome of this class action, regardless of what becomes of their breach-of-contract causes of action. *Id.; see also Glasner v. Am. Econ. Ins. Co.*, 2026 WL 395006, at \*7; *Scott v. Dart*, 99 F.4th 1076, 1082–84 (7th Cir. 2024).

Thus, Allstate's argument that the "Interest-Only Plaintiffs" lack Article III standing is without merit. *See Cortinas*, 2025 WL 233589, at \*3-5. This Court maintains jurisdiction to adjudicate this matter as it pertains to the "Interest-Only" Plaintiffs.

### B. Appraisal Plaintiffs

Allstate also contends the Plaintiffs who underwent appraisal ("Appraisal Plaintiffs") lack Article III standing because Allstate later issued appraisal-based settlement offers. Allstate contends its tender of full payment of the appraised RCV amounts, plus a windfall, "extinguished each Appraisal Plaintiff's breach-of-contract claim."

This argument is simply a reframing of an argument Allstate presented for summary judgment. In its Motion for Summary Judgment, Allstate argued that because it submitted full payment for the appraisal-assessed ACV amount, its liability for the breach of contract cause of action was extinguished. *See ECF No. 181., p. 9*. Allstate argued that this tender of full payment was not comparable to an offer of settlement because the appraisal award was binding under the Policy terms, and therefore, the Appraisal Plaintiffs were required to accept Allstate's payment of whatever ACV the appraisal panel assessed. *Id*.

This Court denied Allstate's Motion for Summary Judgment on this basis, finding the parties' arguments and the undisputed facts presented a clear genuine dispute of material fact whether the Appraisal Plaintiffs accepted Allstate's payment of the appraisal assessment. *ECF*

*No. 181, pp. 9-13*, citing *Cortinas*, 2025 WL 233589, at *10, and n.11. This Court determined Allstate's tender of the full ACV appraisal assessment was not binding upon the Appraisal Plaintiffs as a matter of law because the appraisal panel admittedly lacked authority to resolve the parties' legal dispute. *Id*. Instead, the appraisal panel assessed an ACV value for efficiency upon the Court's determination of the legal dispute. *Id.* These findings and this holding still controls even though Allstate now reframes the same argument as affecting these "Appraisal Plaintiffs'" standing, rather than "extinguishing" the breach of contract cause of action. Thus, the same reasons this Court denied Allstate's Motion for Summary Judgment also apply here in this context.

As with the "Interest-Only Plaintiffs," Article III standing existed when these Appraisal Plaintiffs filed suit because they had already been underpaid through ACV payments that deducted non-material depreciation. Subsequent appraisal proceedings do not retroactively eliminate that injury. The dispositive legal question whether Allstate's withholding of non-material depreciation from ACV payments violates the policy remains unresolved, even following appraisal, and continues to present a live controversy. *See Cortinas*, 2025 WL 233589, at *10, n.11. Because appraisal did not resolve the liability question, redressability remains intact. Thus, Allstate's tender of the full appraisal award is not a jurisdictional bar, and this Court maintains jurisdiction to adjudicate this matter as it pertains to the "Appraisal Plaintiffs." *See id*.

### 2.  Objections to Recommendation for Class Certification

Allstate presents other objections to Magistrate Judge Bemporad's Report and Recommendation: (1) Allstate objects "to the ultimate recommendation that a class be certified under Rule 23"; (2) Allstate objects to the conclusion that the Interest-Only Plaintiffs' claims are typical because these Plaintiffs' have no injury due to Allstate's alleged depreciation of anticipated labor

cost, and these Plaintiffs have uniquely applicable defenses not shared by other class members; (3) Allstate objects to the conclusion that the Appraisal Plaintiffs meet the "adequacy" requirement because these Plaintiffs willingly engaged in an appraisal process to resolve any alleged underpayment, and otherwise refused to resolve their individual ACV disputes consistent with the liability/damages model they now propose on behalf of the class; (4) Allstate also objects to the conclusion that the Appraisal Plaintiffs' claims are typical because each fully resolved their claim dispute through appraisal, and therefore, there is no similar legal and remedial theories shared with the proposed class; (5) Allstate objects to the conclusion that questions of law or fact common to members of the class predominate over questions affecting only individual members for several reasons; (6) Allstate objects to the conclusion that a class action is superior and manageable through class action. *ECF No. 201, pp. 3-5, 10-29.*

Allstate's objections do not identify any specific legal or factual error committed by Magistrate Judge Bemporad in the Report & Recommendation's analysis. Instead, Allstate re-asserts arguments already considered and rejected by this Court and simply re-asserts the same general arguments presented in its opposition to class certification. For these reasons, these arguments fail. *See Mayberry,* 608 F.2d at 1072; *Battle*, 834 F.2d at 421; *Williams*, 694 F.Supp.3d at 881; *Talbert*, 2017 WL 11236935, at *4–5. Nevertheless, in the interest of caution, the Court reviewed the Report & Recommendation *de novo*.

Upon *de novo* review, the Court finds Magistrate Judge Bemporad carefully analyzed each requirement for class certification under Federal Rule 23. Magistrate Judge Bemporad addresses each certification requirement in detail and explains why Plaintiffs' claim present common legal and factual questions suitable for class treatment. The Court finds no error in Magistrate Judge Bemporad's legal conclusions or factual findings. The Court finds Magistrate Judge

8

Bemporad correctly concluded the proposed class certification as modified is appropriate.

## Conclusion

The Court reviewed the entirety of the Report & Recommendation *de novo* and finds it is in all things correct and should be accepted. Accordingly, the Court **ADOPTS** Magistrate Judge Bemporad's Report & Recommendation (*ECF No. 196*) and, for the reasons set forth therein, **GRANTS IN PART** Plaintiff's Motion for Class Certification. The Court **CERTIFIES** the following class:

> All Allstate Fire, Allstate Vehicle, and Allstate Indemnity personal lines policyholders (or their lawful assignees) who (1) made a structural damage claim for property located in Texas, (2) for which Allstate accepted coverage and calculated ACV pursuant to the replacement cost less depreciation methodology, and (3) which resulted in an ACV payment during the class period from which "non-material depreciation" was withheld from the policyholder; or which would have resulted in an ACV payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, (4) where non-material depreciation is defined as "the application of 'depreciate removal,' 'depreciate non-material' and/or 'depreciate O&P' option settings with Xactimate® software,"—excluding any depreciation, however, attributed to market conditions for those claimants who received no ACV payment.

It is so ORDERED.
SIGNED this 25th day of March, 2026.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE

# EXHIBIT C

| From: | TXW_USDC_Notice@txwd.uscourts.gov |
|---|---|
| Sent: | Monday, March 30, 2026 2:57 PM |
| To: | cmecf_notices@txwd.uscourts.gov |
| Subject: | Activity in Case 5:22-cv-00580-JKP-HJB Sims et al v. Allstate Fire and Casualty Insurance Company et al Order on Sealed Motion |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court [LIVE]

### Western District of Texas

## Notice of Electronic Filing

The following transaction was entered on 3/30/2026 at 2:57 PM CDT and filed on 3/25/2026

| **Case Name:** | Sims et al v. Allstate Fire and Casualty Insurance Company et al |
|---|---|
| **Case Number:** | 5:22-cv-00580-JKP-HJB |
| **Filer:** | |
| **WARNING: CASE CLOSED on 09/23/2025** | |
| **Document Number:** | No document attached |

**Docket Text:**
**ORDER GRANTING IN PART AND DENYING IN PART (see order #208) [138] Sealed Motion Signed by Judge Jason K. Pulliam. (mgr)**

**5:22-cv-00580-JKP-HJB Notice has been electronically mailed to:**

Elizabeth Lee Thompson    lthompson@thompsoncoe.com, jsullivan@thompsoncoe.com

Erik D. Peterson    erik@eplo.law, suzy@eplo.law

Gino J. Rossini    grossini@thompsoncoe.com, jsullivan@thompsoncoe.com

J. Brandon McWherter    brandon@msb.law, lori@msb.law, rachael@msb.law

John Mark Wiggins    jwiggins@thompsoncoe.com, pwhinnery@thompsoncoe.com

Roger D. Higgins    rhiggins@thompsoncoe.com, dreed@thompsoncoe.com, pwhinnery@thompsoncoe.com

Shaun W. Hodge    shodge@hodgefirm.com, bbethscheider@hodgefirm.com, bmorter@hodgefirm.com, dbuergler@hodgefirm.com, eforasiepi@hodgefirm.com, gbethscheider@hodgefirm.com, jjewell@hodgefirm.com, khairfield@hodgefirm.com, kmclaughlin@hodgefirm.com, ldawson@hodgefirm.com, lleblanc@hodgefirm.com, mcokins@hodgefirm.com, mcooper@hodgefirm.com, mfridman@hodgefirm.com, mrusso@hodgefirm.com, rcabrera@hodgefirm.com, wcoleman@hodgefirm.com, wpratt@hodgefirm.com

Shelby Gail Hall    shall@thompsoncoe.com, jsullivan@thompsoncoe.com

T. Joseph Snodgrass    jsnodgrass@snodgrass-law.com, bfriesen@snodgrass-law.com, klelo@snodgrass-law.com, mdetert@snodgrass-law.com

**5:22-cv-00580-JKP-HJB Notice has been delivered by other means to:**